**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEKSANDRA SOBOLESKI,** | : | **Civil Action No.** |
| **1227 First Avenue** | : | |
| **Hellertown, PA 18055** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **WAL-MART STORES EAST, LP,** | : | |
| **2785 Commerce Center Boulevard** | : | |
| **Bethlehem, PA 18015** | : | |
| | : | |
| **702 S.W. Eighth Street** | : | |
| **Bentonville, AR 72716** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Aleksandra Soboleski (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Walmart Stores, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, the Equal Pay Act ("EPA"), the Americans with Disabilities Act of 1990 ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

## **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Wal-Mart Stores East, LP, is a multinational retail corporation

that operates a chain of department stores and grocery stores with a location at 2785 Commerce Center Boulevard, Bethlehem, PA 18015 and with a corporate headquarters located at 702 S.W. Eighth Street, Bentonville, AR 72716.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein

pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended and the Pennsylvania Human Relations Act.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging national origin, gender and disability discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number of 530-2020-01425 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Right to Sue is dated March 16, 2021. Plaintiff received the Right to Sue by mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## FACTUAL BACKGROUND

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is a female of Serbian national origin.

21. On or about August 20, 2010, Respondent hired Plaintiff in the position of Customer Service Manager.

22. During the course of her employment, Plaintiff earned several promotions and worked in various locations.

23. In or about March of 2018, Defendant promoted Plaintiff to Maintenance Facilities Manager at Defendant's Ecommerce Distribution Center in Bethlehem.

24. Plaintiff was well-qualified for said position and performed well.

## PLAINTIFF IS SUBJECTED TO DISPARATE TREATMENT

25. In or about September of 2018, Stephen London ("London"), General Manager, became Plaintiff's direct supervisor.

26. Shortly thereafter, London began to subject Plaintiff to disparate treatment based on her gender and national origin.

27. By way of example, London refused to communicate with Plaintiff and ignored Plaintiff for the first two (2) months that Plaintiff reported to him. Upon information and belief, London did not ignore any of the American-born and/or male employees reporting to him.

28. By way of further example, in or about December of 2018, London hosted a farewell party for James Rodasta, Quality Assurance Operations Manager, at a local bar and Plaintiff was the only Operations Manager who was not on a medical leave of absence who was not invited. All of the invitees were American-born, including, but not limited to, Christopher Dorin, Kaleena Lawrence, Jeffrey Hammons, James Smith, Operations Managers, and Thomas Dix, Quality Assurance Manager.

29. In or about January of 2019, Plaintiff learned that all other Facilities Managers, although they were performing work of equal skill, effort, and responsibility under similar working conditions, were compensated at a higher salary than Plaintiff. Notably, Plaintiff was the only female and only Serbian-born Facilities Manager.

30. Although Plaintiff discussed said pay disparity with Jeanette Aubrey ("Aubrey"), Human Resources Manager, who admitted to said discrepancy, and Jeff Schmidt ("Schmidt"), Regional Maintenance Manager, Defendant failed and refused to increase Plaintiff's inadequate salary.

31. Thereafter, on or about February 6, 2019, London issued Plaintiff a "Meets Expectation" rating during her annual performance review, although her former direct supervisor, Ronny Jimenez ("Jimenez"), informed her that she would receive an "Exceeds Expectations" rating during her mid-year performance review.

32. Importantly, the lesser rating issued to Plaintiff negatively affected her salary increase and bonus payment.

33. When Plaintiff inquired as to why she had received the "Meets Expectation" rating, London admitted to her that he had not spoken to Jimenez about Plaintiff's job performance, despite the fact he had served as her supervisor for half the year. Then

London stated to Plaintiff that he would help her to manage her department because "it is all guys and they push back on you," indicating he believed she was incapable of performing her job because of her gender.

34. Furthermore, during said conversation, London brought up a shocking incident of sexual harassment from the summer of 2018, before he commenced his role as her supervisor, wherein Plaintiff was unwillingly brought to a strip club by a former Director during a business trip. Defendant terminated the employment of said Director because of this incident and it was apparent that London believed said termination to be unfair and held it against Plaintiff. Although Defendant had already concluded its investigation, London ridiculed Plaintiff for complaining about the traumatic experience and further pressed her on her understanding of what occurred at a strip club in an apparent attempt to embarrass and provoke her.

### PLAINTIFF REGISTERS A COMPLAINT OF DISCRIMINATION

35. Following said meeting, Plaintiff registered a complaint of sex and national origin discrimination with Defendant's Human Resource Hotline recounting London's offensive behavior, as aforesaid, and the performance review rating that she received.

36. In response, Erica LNU, Human Resource Hotline Representative, instructed Plaintiff to take her complaint to Noelle Appleman ("Appleman"), Division Vice President, who was London's supervisor.

37. Approximately three (3) days later, Plaintiff called and emailed Appleman about her complaint, but she did not receive a response.

38. In addition, Plaintiff also spoke to Maria Amoedo, Senior Director of Strategy – Supply Chain, about London's discriminatory behavior and comments and performance review rating.

### DEFENDANT RETALIATES AGAINST PLAINTIFF

39. As a direct result of Plaintiff's opposition to discrimination, on or about February 16, 2019, London issued Plaintiff a changed performance review, now stating that she lacked professionalism, among other issues that were false.

40. On March 19, 2019, Plaintiff spoke to London about his changes to her performance review to include these false allegations. Although London denied changing Plaintiff's performance review, Defendant's system clearly showed that he made changes to Plaintiff's performance review on February 6, 2019.

41. Ultimately, Defendant refused to correct London's "Meets Expectations" rating and performance review, thereby negatively impacting her compensation.

### THE DISPARATE TREATMENT AND RETALIATION CONTINUE

42. On or about April 5, 2019, another manager requested that Plaintiff visit the Defendant's Bronx location to provide additional support for that site. When Plaintiff informed Mr. London about this special assignment, he snidely responded that she would be acting merely as a secretary. Said belittling remark was based on Plaintiff's gender and designed to humiliate her in the presence of multiple male managers.

43. In or about late April of 2019, London launched an unwarranted investigation into the use of Plaintiff's break time in an attempt to discipline Plaintiff.  In contrast, London did not undertake investigations into the break time of male and/or American-born employees.

44. On or about May 22, 2019, Schmidt informed London that Maintenance Technicians were complaining that they felt overwhelmed, but also stated that this was not Plaintiff's fault.  Notwithstanding same, London chastised Plaintiff. Upon information and belief, London did not subject his male or American-born direct reports to such senseless verbal abuse.

45. On or about June 13, 2019, London stated to Plaintiff, "I learned a long time ago, you never go against your boss. I'm just going to leave it here," unambiguously revealing his retaliatory animus.

46. On or about June 21, 2019, London repeatedly asked Plaintiff to pronounce "Ottawa" and laughed at her pronunciation due to her accent in front of her male coworkers.

**DEFENDANT TRIES TO FORCE PLAINTIFF OUT**

47. On or about June 21, 2019, Plaintiff learned that Defendant had arranged for her significant demotion to an hourly Maintenance Technician position.

48. By way of background, Plaintiff had previously spoken to London about her desire to return to school but did not state that she wanted to step down from her role.

49. Strangely, although there was no basis for any discipline, Aubrey informed Plaintiff that she would be issued a discipline if she did not accept this position.

50. Plaintiff also learned that it had been announced in a meeting that Plaintiff would no longer be a manager.

51. Despite this clear attempt to force Plaintiff to sever her employment with Defendant, Plaintiff did not accept the position and did not resign.

## DEFENDANT INTERFERES WITH PLAINTIFF'S FMLA LEAVE

52. On or about June 22, 2019, Plaintiff informed Defendant of her medical need for a leave of absence due to Generalized Anxiety Disorder and Major Depressive Disorder. Said medical conditions are disabilities within the meaning of the ADA and the PHRA, and serious health conditions within the meaning of the FMLA.

53. By way of background, Plaintiff has been under the care of a physician for continuing treatment and management of said disabilities, the symptoms of which substantially impair one or more of her major life activities, including, but not limited to, sleeping, concentrating, thinking, communicating, and working.

54. Accordingly, Plaintiff commenced FMLA leave as a reasonable accommodation for her disabilities.

55. While out on her approved FMLA leave, Plaintiff was also diagnosed with Post Traumatic Stress Disorder.  A medical condition that is a disability within the meaning of the ADA and the PHRA., and serious health condition within the meaning of the FMLA.

56. However, throughout Plaintiff's FMLA leave, Defendant required Plaintiff to complete substantive work assignments and barraged her with work-related telephone calls and text messages from colleagues, including, but not limited to, Aubrey and Cathy Hawk, Secretary.

## PLAINTIFF REGISTERS COMPLAINTS OF DISCRIMINATORY AND RETALIATORY CONDUCT

57. On July 24, 2019, Plaintiff emailed Daniel Lawhorn, Associate Relations Case Manager, regarding London's discriminatory and retaliatory conduct.

58. The next day, Lawhorn responded to Plaintiff that he had sent her complaint to Defendant's Ethics Department and that they would contact her; however, the Ethics Department did not contact Plaintiff.

59. Thereafter, London blocked Plaintiff's access to her benefits information.

60. On or about August 17, 2019, Plaintiff emailed a complaint to Jeremy Anderson ("Anderson"), Regional Human Resources Director, recounting London's discriminatory and retaliatory conduct, as well as the interference with her FMLA leave.

61. Although Anderson responded that Defendant would investigate her complaint, Defendant failed to take any corrective action.

62. Thereafter, although Plaintiff was scheduled to return to work on August 26, 2019, London and Aubrey called Plaintiff on August 23, 2019 to harass her and threaten that her employment would be terminated if she did not receive approval for further leave by August 29, 2019.

63. Later that day, Plaintiff amended her complaint with Anderson to include the said harassing telephone call.

**PLAINTIFF IS SUBJECTED TO FURTHER RETALIATION AND TERMINATED**

64. On or about August 26, 2019, Plaintiff returned to work as scheduled.

65. Immediately thereafter, Aubrey informed Plaintiff that she was under investigation and questioned her regarding Preventative Maintenance.

66. In connection therewith, on or about August 30, 2019, London and Aubrey interviewed Plaintiff about Preventative Maintenance that had taken place in 2018.

67. Thereafter, London proceeded to suspend Plaintiff's employment due to alleged "integrity" violations; however, Plaintiff had not engaged in any such violations.

68. On September 1 and 2, 2019, Plaintiff again registered complaints with the Ethics Department detailing the discrimination and retaliation she had experienced.

69. Shortly thereafter, on or about September 2, 2019, Defendant terminated Plaintiff's employment based on alleged integrity issues regarding Preventative Maintenance.

70. Defendant's articulated reason for Plaintiff's termination was purely pretextual and untrue.

71. Plaintiff believes and avers that she was discriminated against due to her gender (female), national origin (Serbian) and disabilities (Generalized Anxiety Disorder, Major Depressive Disorder and Post Traumatic Stress Disorder) in violation of Title VII and the ADA.

72. Plaintiff further avers that she was retaliated against based on her opposition to unlawful discrimination in violation of Title VII and the ADA.

73. Plaintiff also alleges that she was paid less than her male comparators in violation of the EPA.

74. In addition, Plaintiff also contends that Defendant interfered with and retaliated against her for exercising her rights under the FMLA and retaliated against her based on her request for a reasonable accommodation under the ADA.

## COUNT I – DISCRIMINATION
### EQUAL PAY ACT, 29 U.S.C. § 206(d)

75. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

76. Defendant employed Plaintiff within the meaning of the Equal Pay Act.

77. Defendant paid different wages to Plaintiff, a woman, at rates less than the rates that it pays male employees for equal work in jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions.

78. In doing so, Defendant violated the Equal Pay Act, 29 U.S.C. § 206(d).

79. Defendant's violation of the Equal Pay Act was willful.

80. Defendant cannot demonstrate that the wage differential was caused by any factor other than sex.

81. Defendant did not have a legitimate, non-discriminatory reasons for its compensation decisions, and its stated reason was pretext for discrimination.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – GENDER DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

82. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

83. Plaintiff is a member of protected classes in that she is female.

84. Plaintiff was qualified to perform the job for which she was hired.

85. Plaintiff suffered adverse job actions, including, but not limited to termination.

86. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

87. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

88. Defendant discriminated against Plaintiff on the basis of her gender.

89. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

90. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

   **WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

## COUNT III – GENDER DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

91. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

92. The foregoing conduct by Defendants constitutes unlawful discrimination against

Plaintiff on the basis of her gender (female).

93. As a result of Defendants' unlawful gender discrimination, Plaintiff has suffered damages

as set forth herein.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

## COUNT IV – NATIONAL ORIGIN DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

94. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

95. Plaintiff is a member of protected classes in that her national origin is Serbian.

96. Plaintiff was qualified to perform the job for which she was hired.

97. Plaintiff suffered adverse job actions, including, but not limited to termination.

98. Similarly situated people outside of Plaintiff's protected class were treated more

favorably than Plaintiff.

99. Circumstances exist related to the above cited adverse employment actions that give rise

to an inference of discrimination.

100. Defendants discriminated against Plaintiff on the basis of her national origin.

101. No legitimate, non-discriminatory reasons exist for the above cited adverse employment

actions that Plaintiff suffered.

102. The reasons cited by Defendants for the above cited adverse employment actions that

Plaintiff suffered are pretext for discrimination.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V - NATIONAL ORIGIN DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

103. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

104. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of her national origin (Serbian).

105. As a result of Defendant's unlawful national origin discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

106. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

107. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

108. Plaintiff was qualified to perform the job.

109. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

110. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse

employment action.

111. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

112. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

113. The purported reason for Defendant's decision is pretextual.

114. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

115. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

116. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

117. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

118. Plaintiff has disabilities that substantially limit major life activities.

119. Plaintiff was qualified to perform the job.

120. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

121. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

122. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

123. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

124. The purported reason for Defendant's decision is pretextual.

125. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

126. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VIII – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

127. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

128. Plaintiff engaged in activity protected by Title VII when she complained internally to Defendant of national origin and gender discrimination.

129.  Defendant also took adverse employment actions against Plaintiff, including, but not limited to, termination.

130. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment actions.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IX – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

131. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

132. Plaintiff engaged in activity protected by the ADA when she requested a reasonable

accommodation.

133. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

134. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT X – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

135. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

136. Plaintiff engaged in activity protected by the PHRA when she complained internally to Defendant about gender and national origin discrimination and requested a reasonable accommodation.

137. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

138. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT XI – INTERFERENCE
## FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*

139. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

140. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

141. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave in order to care for her own serious medical conditions.

142. Plaintiff gave Defendant proper notice of her own qualifying serious health conditions under the FMLA.

143. Plaintiff was entitled to benefits under the FMLA.

144. Plaintiff attempted to exercise her FMLA rights.

145. Defendant unlawfully prevented Plaintiff from obtaining those benefits.

146. Defendant acted in bad faith by interfering with Plaintiff's application for FMLA leave.

147. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

148. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1)

149. As a result of Defendant's discrimination, Plaintiff suffered adverse employment actions causing her harm.

**WHEREFORE**, Plaintiff, Aleksandra Soboleski, requests that the Court grant him the relief against Defendant set forth in the Prayer for Relief clause, *infra*.

## COUNT XII – RETALIATION
## FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*

150. The foregoing paragraphs incorporated by reference herein as if the same were set forth at length.

151. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for Family and Medical Leave Act Leave.

152. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave in order to care for her own serious medical conditions.

153. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

154. Plaintiff was entitled to benefits under the FMLA.

155. Plaintiff attempted to exercise her FMLA rights.

156. Defendant terminated Plaintiff and that termination was related to Plaintiff's attempt to exercise or exercise of her FMLA rights.

157. Defendant's motivation for terminating Plaintiff was connected causally to Plaintiff's application of and utilization of FMLA leave.

158. Following her termination, Defendant notified Plaintiff that her request for FMLA leave had been approved; yet, Defendant already had terminated Plaintiff's employment.

159. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

160. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and liquidated damages under the FMLA.

**WHEREFORE**, Plaintiff, Aleksandra Soboleski, requests that the Court grant her the relief against Defendant set forth in the Prayer for Relief clause, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Aleksandra Soboleski, requests that the Court grant her the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the ADA, the EPA, the PHRA and the FMLA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.


RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC


Date: May 14, 2021          **By:**   */s/ David M. Koller*
                            David M. Koller, Esquire (90119)
                            2043 Locust Street, Suite 1B
                            Philadelphia, PA 19103
                            215-545-8917
                            davidk@kollerlawfirm.com

                            *Counsel for Plaintiff*